**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS**

**Calvin Anderson**                                                                                                        **Plaintiff**

v.                                     **CASE NO. 3:14CV00170 JTK**

**Carolyn W. Colvin, Acting Commissioner,
Social Security Administration**                                                                       **Defendant**

## ORDER AFFIRMING THE COMMISSIONER

Calvin Anderson seeks judicial review of the denial of his application for supplemental security income (SSI). Anderson applied for SSI on November 14, 2011, with an alleged onset date of February 28, 2007.[1] SSI benefits, however, cannot be received prior to the application date.[2] Therefore, the alleged onset date is November 14, 2011. Anderson last worked as a stocker in a grocery store in 2010.[3] He bases disability on learning disability and attention deficit hyperactivity disorder (ADHD).[4]

**The Commissioner's decision.** The Commissioner's ALJ determined that Anderson has not engaged in substantial gainful activity since the application date.[5] Anderson has a severe impairment - borderline intellectual functioning.[6] Anderson's severe impairment does not meet the Listings.[7] Anderson can perform work at all exertional levels, but is limited to work where

---

[1] SSA record at pp. 116 & 157.

[2] *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989); 20 C.F.R. § 416.335.

[3] SSA record at p. 162.

[4] *Id.* at p. 161.

[5] *Id.* at p. 39.

[6] *Id.*

[7] *Id.* at p. 40.

interpersonal contact is only incidental to work performed; the complexity of tasks is learned and performed by rote, contains few variables and requires little independent judgment; and any supervision required is simple, direct and concrete.[8] The ALJ held that Anderson has no past relevant work, but can perform the positions of commercial or industrial clean-up worker, warehouse worker, and small product assembler, positions identified by the vocational expert (VE) as available in the state, regional and national economies.[9] Anderson's application was denied.[10]

After the Commissioner's Appeals Council denied a request for review, the ALJ's decision became a final decision for judicial review.[11] Anderson filed this case to challenge the decision. In reviewing the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[12]

**Anderson's allegations.** Anderson maintains that the ALJ's denial of disability benefits should be reversed because the ALJ erred (1) in determining that Anderson's impairment does

---

[8]*Id.* at p. 41.

[9]*Id.* at pp. 47-48.

[10]*Id.* at p. 48.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the appeal procedure permits claimants to appeal only final decisions).

[12]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny any applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

not meet the Listings; and (2) in the hypothetical presented to the VE. These arguments are not persuasive. No error occurred, and the ALJ's decision to deny benefits is supported by substantial evidence.

Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion."[13] For substantial evidence to exist in this case, a reasonable mind must accept the evidence as adequate to support the determination that Anderson is not disabled.[14]

**The Listings.** Anderson maintains that he meets listing 12.05C, and it was error for the ALJ to find otherwise. Further, he asserts that the ALJ failed to fully develop the record with respect to listing 12.05C. Listing 12.05C applies to mental retardation.[15, 16] To meet this listing, Anderson must present evidence establishing: (1) mental retardation, referred to as significant subaverage general intellectual functioning with deficits in adaptive functioning, initially manifested before age 22; (2) a valid verbal, performance or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.[17] It is Anderson's burden to prove that his conditions meet or equal all of

---

[13] *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (internal quotations and citations omitted).

[14] *See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[15] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C.

[16] In 2013, the Commissioner complied with Rosa's law by replacing the terms "mentally retarded" or "mental retardation" with "individual with an intellectual disability" and "intellectual disability." This order uses the earlier terms because the challenged decision was issued prior to that change.

[17] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C.

the specified medical criteria in a listing.[18] He has not met that burden. His argument is not persuasive.

Although Anderson has received an IQ score within the 60 to 70 range,[19] he cannot establish that he meets the first or third criteria of the listing. The first criterion requires Anderson to prove mental retardation that manifested itself prior to age twenty-two. It is true that Anderson attended special education classes throughout high school and often had problems concentrating.[20] The record is void, however, of any mental retardation diagnosis or any language suggesting *significant* subaverage general intellectual functioning. In 2007, Anderson was evaluated by his school district, and, although he had some extremely low scores in reading and math on the Wechsler Individual Achievement Test-II, he received a full scale IQ of 84.[21] In a 2008 report from the school district, Anderson's 2007 reading and math scores were described as "borderline."[22] In a December 2011 Mental Diagnostic Evaluation and Intellectual Assessment, Anderson received a full scale IQ score of 72.[23, 24] The state physician diagnosed

---

[18] *See McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011).

[19] SSA record at p. 268.

[20] *Id.* at pp. 227, 233, 235, 239 & 244.

[21] *Id.* at pp. 240-241.

[22] *Id.* at p. 227.

[23] *Id.* at p. 268.

[24] In the assessment, the state physician indicated that the IQ scores were not valid. The physician subsequently stated that she inadvertently marked the wrong box, and that the scores were in fact valid. SSA record at p. 293.

him with borderline intellectual functioning.[25] A second state physician subsequently diagnosed the same and determined that Anderson is capable of unskilled work.[26]

Anderson has also not established that he has a physical or other mental impairment imposing an additional and significant work-related limitation of function. Although Anderson maintains that he suffers from ADHD, the record, and Anderson's own words, fail to provide support. Anderson directs the Court's attention to educational records from 2007.[27] The records indicate that Anderson was diagnosed with ADHD in the summer before fifth grade, and that the diagnosis was sustained in seventh and tenth grade evaluations.[28] Although that may be true, there is nothing during the relevant time period to support an ADHD diagnosis. Anderson himself stated during the hearing that he was never diagnosed with ADHD.[29] Indeed, although Anderson discussed concerns about ADHD with his physicians, such a diagnosis was never made. In 2012, Anderson sought evaluation for ADHD and was referred to another clinic.[30] He never followed up. The records also establish that Anderson was never treated for ADHD or symptoms related to ADHD. During the assessments conducted by state physicians, Anderson's ADHD allegations were addressed.[31] Although one state physician assessed a learning disorder

---

[25]SSA record at p. 269.

[26]*Id.* at pp. 277 & 292.

[27]*Id.* at p. 239.

[28]*Id.*

[29]*Id.* at p. 21.

[30]*Id.* at p. 296.

[31]*Id.* at p. 266.

NOS rule-out diagnosis,[32] no one diagnosed Anderson with ADHD. Anderson did not meet his burden with respect to Listing 12.05C

The record in the instant case is indeed limited, and it is the responsibility of the ALJ to "fully and fairly develop the evidentiary record."[33] "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work."[34] "While an ALJ does have a duty to develop the record, this duty is not never-ending. . . . The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."[35] The records discussed above provided sufficient evidence for the ALJ to determine if Anderson meets listing 12.05C. Perhaps most telling is the lack of medical treatment. Although Anderson maintains that his impairments are disabling, he rarely sought treatment. Indeed, from 2007 to 2013, the timespan of the record, there are only two medical records in which Anderson sought treatment for his mental impairments.[36] Logic dictates that if an individual suffers from disabling impairments, more frequent medical care would be sought. No error occurred with respect to developing the record.

---

[32]*Id.* at p. 269.

[33]*Byes v. Astrue*, 687 F.3d 913, 915-916 (8th Cir. 2012).

[34]*Id.* at 916.

[35]*McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (internal citations omitted).

[36]SSA record at pp. 260 & 296.

A reasonable mind would accept the evidence as adequate to support the ALJ's determination that Anderson's impairments do not meet the Listings. The determination is supported by substantial evidence and no error occurred.

**Hypothetical.** Anderson maintains that the ALJ's denial of his disability benefits is not supported by substantial evidence because the ALJ failed to include Anderson's borderline intellectual functioning in the hypothetical presented to the VE. During the hearing, the ALJ presented the VE with a hypothetical of an individual who has

> no exertional limitations but they have unskilled limitations as far as their non-exertional mental limitations and because of that, they should be able to do unskilled work at all exertional levels. By unskilled work I mean work where interpersonal contact is only incidental to the work performed. To be complex, any tasks would need to be learned and performed by wrote [sic], contain few variables, require little judgment, and any supervision required would need to be simple, direct and concrete.[37]

At step five, the burden shifts to the Commissioner to identify jobs that the claimant can perform considering his RFC, age, education and work experience. The testimony of a VE identifying jobs available to a claimant will constitute substantial evidence at this step "when it is based on a hypothetical that accounts for all of the claimant's proven impairments."[38] The hypothetical, however, "need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete consequences of those impairments."[39] The question, then, is whether substantial evidence supports the ALJ's exclusion of Anderson's borderline intellectual functioning diagnosis from the hypothetical. A review of

---

[37] *Id.* at pp. 29-30.

[38] *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010).

[39] *Id.* (internal quotations and citations omitted).

the medical records and hearing testimony reveals that the ALJ's decision to exclude this from the hypothetical is supported by substantial evidence.

While the ALJ did not specifically include borderline intellectual functioning as a limitation in the hypothetical, he did include limitations that are meant to address the needs of an individual with below average intellectual abilities. The record establishes that nothing further was required as the hypothetical adequately takes into account Anderson's impairments.

Anderson is capable of conducting many activities of daily living. Anderson was twenty-two years old at the time of the hearing and testified that he completed high school.[40] During the December 2011, Mental Diagnostic Evaluation and Intellectual Assessment it was noted that Anderson is able to drive, but has never had a license; is able to do some laundry and cleaning; can cook breakfast and use a microwave; and shops unaccompanied for clothing.[41] At the hearing Anderson testified that he can count change, wash dishes, was capable of learning jobs in the past at fast food restaurants and a grocery store, and volunteers eight hours a month at a food pantry.[42]   Assessments conducted by state physicians establish that Anderson is capable of handling many tasks. In 2011, a state physician determined that although Anderson has some limitations in adaptive functioning, he can communicate and interact in an adequate manner; attend and sustain concentration on basic tasks; and complete simple, work-like tasks within an acceptable timeframe.[43] In a subsequent Psychiatric Review Technique, a state physician

---

[40]SSA record at p. 18.

[41]*Id.* at p. 269.

[42]*Id.* at pp. 23 & 26.

[43]*Id.* at p. 270.

determined that Anderson is only mildly restricted in activities of daily living and maintaining social functioning.[44] He has moderate difficulties in maintaining concentration, persistence or pace.[45] The same physician held that Anderson

> has some limitations which would interfere with his capacity to handle complex or detailed tasks. His capacity to complete tasks which are routine and simple are [sic] not significantly limited at this time. [He] would be able to adhere to a schedule and complete a normal work week based on the current evidence."[46]

She concluded that Anderson "is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete (unskilled)."[47]

The number of medical records available and gaps in treatment provide further support for the hypothetical. As discussed above, Anderson rarely sought treatment for his impairments. Anderson also did not follow recommendations from his physicians. Following one of his appointments, Anderson was referred to another clinic.[48] He never followed up with the referral. Sporadic treatment and the decision not to follow recommended treatment are not supportive of limitations more severe than those contained in the hypothetical.

A reasonable mind would accept the evidence as adequate to support the ALJ's exclusion of the borderline intellectual functioning diagnosis from the hypothetical. The determination is supported by substantial evidence.

---

[44]*Id.* at p. 286.

[45]*Id.*

[46]*Id.* at p. 293.

[47]*Id.* at p. 292.

[48]*Id.* at p. 296.

**Conclusion.** Substantial evidence supports the ALJ's decision. No legal error occurred. For these reasons, the court DENIES Anderson's request for relief (docket entry # 2) and AFFIRMS the Commissioner's decision.

It is so ordered this 21st day of May, 2015.

_____
UNITED STATES MAGISTRATE JUDGE